UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED MCBRIDE,

        Plaintiff,

v.                                  Case No. 22-cv-462-bhl

MICHAEL LUENEBURG,

        Defendant.

## DECISION AND ORDER

Plaintiff Fred McBride, who is representing himself, is proceeding on an Eighth Amendment claim that Defendant Michael Lueneburg used excessive force at the Waupun Correctional Institution on January 21, 2022. Dkt. Nos. 1 & 7. On March 9, 2023, Lueneburg filed a motion for summary judgment. Dkt. No. 23. Because video evidence confirms that no reasonable jury could conclude that Lueneburg applied force maliciously and sadistically for the very purpose of causing harm, the Court will grant the motion and dismiss this case.

### FACTUAL BACKGROUND

McBride was an inmate at the Waupun Correctional Institution, where Lueneburg was a correctional officer. Dkt. No. 25, ¶¶1-2. At the time giving rise to this lawsuit, McBride was on clinical observation in the Restrictive Housing Unit (RHU). *Id.*, ¶4; *see also* Dkt. No. 37, ¶1. In RHU, the cell door is solid metal with a small square window at the top for purposes of observation and a horizontal rectangle in the middle ("a trapdoor") for exchanging items without opening the entire door. *See* Dkt. No. 27-6. For safety reasons, it is standard practice at the institution to tether an inmate at the wrist when opening the trapdoor. Dkt. No. 25, ¶8. This practice limits an inmate's

ability to prepare something to harm or blindside staff when they are not looking. *Id.*, ¶21. During over-night shifts, staff try not to open the trapdoor at all due to the limited number of staff members available should an incident occur. *Id.*, ¶9. But there are exceptions to the rule, including for when an inmate makes a request for medication. *Id.*, ¶10.

On January 21, 2022, at around 10:35 p.m., McBride asked for his inhaler. *Id.*, ¶5. Consistent with institution policy, Lueneburg tethered McBride's wrist to the door and gave him the inhaler. *Id.*, ¶¶6-7. McBride used his inhaler; then Lueneburg removed the tether. *Id.*, ¶¶11-12. But before Lueneburg could close the trapdoor, McBride placed both his hands in the trapdoor and asked for a "white shirt" (a captain or a lieutenant) to discuss having additional property in his observation cell. Dkt. No. 1 at 3; *see also* Dkt. No. 40, ¶11. Lueneburg responded that he would not refer the issue to the supervisors until McBride removed his hand from the trapdoor and let him close it. Dkt. No. 40, ¶12. McBride then stated, "never mind don't worry about it I'll just hold the trap until a white shirt [performs an observation] check." *Id.*, ¶13. Lueneburg then allegedly yelled, "get your fucking hands off the trap nobody's coming down here." *Id.*, ¶14. McBride admits he continued not to comply. *Id.*, ¶15.

The primary dispute in this case arises from what happened next. According to Lueneburg, he attempted to re-tether McBride's wrist so he would not have free rein of his hands with an opened trapdoor. *Id.*, ¶¶19-20; *see also* Dkt. No. 27-6 at 1:06-1:11. Lueneburg explains that he wanted to prevent McBride from preparing something to harm or blindside him while the trapdoor was open. Dkt. No. 25, ¶21. As Lueneburg tried to reapply the tether, McBride yelled, "What the fuck are you doing?", and yanked his hands along with the tether strap into his cell. *Id.*, ¶22; *see also* Dkt. No. 27-6 at 1:08. Lueneburg attempted to remove the tether from the observation cell, but his hand got caught in between the tether and the trapdoor. Dkt. No. 25, ¶23. Lueneburg

2

pulled the tether to free his hand, but McBride continued pulling on the tether. *Id*., ¶26; *see also* Dkt. No. 27-6 at 1:26-1:42. Lueneburg explains that tethers have a hook at the end that can be used as a weapon, and he did not know what McBride's intentions were, so he wanted to regain possession of the tether and free himself. Dkt. No., ¶¶24-25. Once Lueneburg's hand was freed from the tether, he noticed that McBride still had the tether in both of his hands, but because he was away from the door, Lueneburg closed the trap with the tether still in it. *Id*., ¶¶27-28. Lueneburg states that he only used the minimum amount of force required to free his own hand from the tether and he did not intend to cause any injury or harm to McBride during the incident. *Id*., ¶¶43-45.

McBride tells a very different story. According to him, he was viciously attacked by Lueneburg with a wrist tether for no legitimate reason. McBride claims Lueneburg "assaulted" him with the tether "banging and scraping it against [his] hands while yelling 'get your fucking hands in.'" Dkt. No. 1 at 3; *see also* Dkt. No. 40, ¶16. Lueneburg paused the attack for a moment and McBride asked him, "what's wrong with [you]?" Dkt. No. 1 at 3. Lueneburg responded, "a lot," and started attacking him again with an "enraged" look on his face. *Id*. McBride admits that he then attempted to grab the tether and pull it into his cell, at which point Lueneburg attempted to slam McBride's fingers into the trap door. *Id*. at 3-4; *see also* Dkt. No. 40, ¶¶23-24. McBride was able to remove his hands from the trap, so only the tether remained stuck in the door. Dkt. No. 1 at 4. Lueneburg then radioed for help, showed McBride his bloody hand, and said, "this isn't over." *Id*. McBride again asked Lueneburg what was wrong with him and Lueneburg again responded, "a lot." *Id*. McBride states that the attack lasted 45-50 seconds, *see* Dkt. No. 37, ¶6, and that Lueneburg kept glancing down at his body camera to make sure it was not recording, *see* Dkt. No. 40, ¶¶16-20.

3

Both parties needed medical attention after the incident. Dkt. No. 25, ¶¶32, 46-51; Dkt. No. 37, ¶¶3, 5. McBride later received a conduct report in connection with the incident. Dkt. No. 25, ¶38. He was found guilty of disobeying orders and disruptive conduct but not guilty of assaulting staff. *Id.*, ¶40; Dkt. No. 37, ¶3.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Lueneburg asserts that he is entitled to summary judgment because videotape evidence confirms that he did not use force maliciously or sadistically for the purpose of causing harm.

Instead, he claims that his own hand was stuck on the tether and he only pulled on it long enough and with enough force to free his own hand.

To survive summary judgment on an Eighth Amendment excessive force claim, McBride must present evidence from which a reasonable jury could conclude that Lueneburg applied force maliciously and sadistically to cause harm. *Caffey v. Maue*, 679 F. App'x 487, 491–92 (7th Cir. 2017); *see also Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020). The Court examines: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019). "[P]laintiffs in a §1983 action must establish that prison officials acted wantonly or, stated another way 'maliciously and sadistically for the very purpose of causing harm.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (internal citations omitted). Negligence or gross negligence is not enough. *Id.*; *see also Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007). This is true even when certain portions of videotape evidence are inconclusive and the parties present different versions of the events. *See e.g. Boyd v. Pollard*, 621 Fed. Appx. 352, 355-56 (7th Cir. 2015). In *Boyd*, the plaintiff alleged that guards used excessive force during a cell extraction when they body-slammed him onto a concrete floor, placed him in a chokehold, and hit him in the face and head. *Id.* at 354. The defendants denied these allegations and a video confirmed most of

5

the defendants' account, except for brief times when the plaintiff was out of camera view. *Id*. The Seventh Circuit recognized that certain portions of the video were inconclusive and that the parties had presented different versions of the events. *Id*. But it nonetheless determined that "no juror who viewed the video could reasonably conclude—given the professional behavior of [the defendants] and minor injury sustained by [the plaintiff]—that the guards, when outside the camera's view, attacked [the plaintiff.]" *Id*. at 356.

The Court has reviewed videotape evidence of the incident, *see* Dkt. No. 27-6, and concludes that no reasonable jury could credit McBride's version of events. Contrary to McBride's assertions, the video does not show Lueneburg initiating a 45-50 second attack against McBride using a tether for no legitimate reason. Instead, the video shows that McBride resisted the attempt to re-tether him then pulled on the tether from the other side of the door. *Id*. at 1:08, 1:26-1:42. The video is filmed from a distance, so it is hard to tell for certain whether Lueneburg's hand is in fact stuck in the tether. It is possible that Lueneburg was pulling on the tether simply because McBride was pulling on it from the other side. But either way, there was no vicious assault. Indeed, McBride admits that he disobeyed orders to remove his hands from the trapdoor, that he attempted to keep the trapdoor open with his hands, and that he attempted (and was successful) in pulling the tether into his observation cell. *See* Dkt. No. 39, ¶¶13, 15; *see also* Dkt. No. 40, ¶¶ 13-16, 23. These actions created a security risk, and in light of those circumstances, Lueneburg's decision to pull on the tether to attempt to remove it from the observation cell was reasonable and proportional to the facts known to him at the time. Indeed, McBride was not allowed to have a tether in his cell—he was after all in an "observation cell" intended to prevent self-harm—and the tether could have been used as a weapon to either harm staff or to harm himself. Lueneburg may have been negligent in engaging with McBride rather than immediately calling for assistance when

6

McBride disobeyed orders and created a security risk. But based on videotape evidence no reasonable jury could conclude that Lueneburg initiated a 45-50 second attack on McBride and applied force maliciously and sadistically for the very purpose of causing harm.

McBride attempts to discredit videotape evidence by reiterating a dispute he raised during discovery. He observes that the hallway footage skips two times and portions (a total of 18 seconds) of the video are missing. Specifically, five seconds are missing between 0:46 and 0:47 and thirteen seconds are missing between 2:18 and 2:19. *See* Dkt. No. 27-6. But, as was explained during discovery, it's unclear what causes the skipping—the recording may have briefly stopped due to lack of detected movement or the computer system may have automatically merged smaller video files into a bigger file. Regardless, defense counsel confirms that the videotape footage has not been edited. The Court is entitled to rely on this representation given that attorneys are officers of the Court who have professional and ethical obligations to tell the truth. *See e.g. United States v. Smith*, No. 21-CR-30003-DWD, 2022 WL 17519767, at *2 (S.D. Ill. Dec. 8, 2022)("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations."). More importantly and in any case, the missing portions of the video do not concern the actual altercation, which happened between 1:26 and 1:42. The skips occur well before and well after the events in dispute. Further, as the Seventh Circuit has held, even when certain portions of videotape evidence are missing, the remainder of the video can still establish that no reasonable jury could credit a plaintiff's version of events. *See Boyd*, 621 Fed. Appx. at 355-56.

In sum, McBride presents nothing more than conjecture and speculation regarding Lueneburg's alleged mood that evening to support his assertions that he used force maliciously and sadistically for the very purpose of causing him harm. McBride's speculation is not enough

7

to survive summary judgment, *see Weaver v. Champion Petfoods USA Inc.,* 3 F.4th 927, 936 (7th Cir. 2021) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."), and videotape evidence discredits his version of events. Therefore, Lueneburg is entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 23) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on July 18, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.